UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

GUCCI AMERICA, INC., *et al.*,

Plaintiffs-Appellees,

– against –

WEIXING LI, *et al.*,

Defendants,

BANK OF CHINA,

Non-Party Appellant.

USCA No. 15-3850

**<u>EMERGENCY MOTION</u>**

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY APPELLANT
BANK OF CHINA'S EMERGENCY MOTION FOR A STAY OF
<u>CONTEMPT ORDER AND SANCTIONS PENDING APPEAL</u>**

ALLEN & OVERY LLP
Laura R. Hall
Justin L. Ormand
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 610-6300

*Attorneys for Non-Party
Appellant Bank of China*

## CORPORATE DISCLOSURE STATEMENT

Non-Party Appellant Bank of China is publicly listed on the Hong Kong Stock Exchange and the Shanghai Stock Exchange. Central Huijin Investment Ltd. owns a majority of Bank of China's outstanding stock. No publicly held corporation holds 10% or more of Bank of China's outstanding stock.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................i

TABLE OF AUTHORITIES ...................................................................ii

STATEMENT OF THE CASE................................................................1

STANDARD OF LAW .............................................................................7

ARGUMENT ..............................................................................................7

    I.     THE COMPULSION AND CONTEMPT ORDERS ARE
          HIGHLY LIKELY TO BE REVERSED ..............................................7

          A.     The District Court Erroneously Asserted Specific
                  Jurisdiction Over Non-Party BOC Based On The In-
                  Forum Conduct Of Others ..........................................................7

          B.     The District Court Erroneously Asserted Specific
                  Jurisdiction Based On Non-Party BOC's New York
                  Contacts That Have Nothing To Do With The Subpoenas
                  Or With This Lawsuit ................................................................11

          C.     The District Court Failed To Consider Properly The
                  Reasonableness Of Exercising Jurisdiction Over Non-
                  Party BOC In The Transnational Context Of This Case .........14

          D.     The District Court Did Not Comply With This Court's
                  Mandate To Reconsider The Comity Implications Of
                  Exercising Jurisdiction  Over Non-Party BOC........................16

    II.    THE HARM CAUSED BY "COERCIVE" SANCTIONS IS
          INHERENTLY IRREMEDIABLE......................................................18

    III.   A STAY WILL SERVE THE PUBLIC INTEREST AND
          WILL CAUSE GUCCI NO HARM ..................................................19

CONCLUSION ........................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*7 West 57th Street Realty Co. v. Citigroup, Inc.*,
No. 13 Civ. 981 (PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31,
2015) .............................................................................................12

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) .....................................................13, 16

*Asahi Metal Indus. Co. v. Superior Court*,
480 U.S. 102 (1987)...........................................................................15

*Brown v. Braddick*,
595 F.2d 961 (5th Cir. 1979) ...................................................... 18-19

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*,
No. 14 Civ. 5216(DLC), 2015 WL 4164763 (S.D.N.Y. July 10,
2015) .............................................................................................10

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014).......................................................11, 12, 13

*Dove v. Atl. Capital Corp.*,
963 F.2d 15 (2d Cir. 1992) ...................................................... 5-6, 19

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
131 F. Supp. 2d 540 (S.D.N.Y. 2001) ...................................... 19-20

*Gargano v. Cayman Nat'l Corp.*,
No. 09-11938-JLT, 2010 WL 2245034 (D. Mass. June 2, 2010).......................11

*George v. Shadow Ridge Props.*,
No. 4:14-CV-1167(CEJ), 2015 WL 300389 (E.D. Mo. Jan. 22,
2015) ...................................................................................... 10-11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
131 S. Ct. 2846 (2011).......................................................................13

*Grand Jury Subpoena Duces Tecum Dated Apr. 23, 1981 Witness v. United States*,
    657 F.2d 5 (2d Cir. 1981) ...................................................................19

*Gucci Am, Inc. v. Weixing Li*,
    No. 10 Civ. 4974, 2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011),
    *rev'd*, 768 F.3d 122 (2d Cir. 2014)........................................ 12, 13-14

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) ..........................................1, 2, 12, 16, 19

*In re Application to Quash Subpoena to Nat'l Broad. Co.*,
    79 F.3d 346 (2d Cir. 1996) ..............................................................19

*In re Terrorist Attacks on Sept. 11, 2011*,
    714 F.3d 659 (2d Cir. 2013) ............................................................13

*Licci v. Lebanese Canadian Bank, SAL*,
    704 F. Supp. 2d 403 (S.D.N.Y. 2010) ..............................................10

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012) ..............................................................8, 9, 10

*Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) ..............................................7, 8, 9, 10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ........................................................14, 15

*Mikutaitis v. United States*,
    478 U.S. 1306 (1986)..............................................................18, 20

*Mount Sinai Sch. of Med. v. Am. Tobacco Co.* (*Application of Am. Tobacco Co.*),
    880 F.2d 1520 (2d Cir. 1989) ..........................................................19

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
    462 F.3d 87 (2d Cir. 2006) ..............................................................19

*SEC v. Citigroup Global Mkts. Inc.*,
    673 F.3d 158 (2d Cir. 2012) ............................................................7

*Thapa v. Gonzales*,
    460 F.3d 323 (2d Cir. 2006) ................................................................................7

*Tiffany (NJ) LLC v. Qi Andrew*,
    No. 10 Civ. 9471(RA)(HBP), 2012 WL 5451259
    (S.D.N.Y. Nov. 7, 2012), *aff'd*, Order, No. 10 Civ.
    9471(RA)(HBP) (S.D.N.Y. May 21, 2013), ECF No. 70 ..................................17

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)................................................................................10, 12

Non-party Appellant Bank of China ("BOC" or the "Bank") respectfully moves for a stay pending appeal of the Opinion and Order entered by the district court on November 30, 2015 ("Contempt Order") and of the sanctions imposed thereby.

## STATEMENT OF THE CASE

This Court's recent decision details the background to this appeal. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014). In summary, plaintiffs (together, "Gucci"),[1] members of a French luxury goods conglomerate, assert counterfeiting claims against defendants who apparently live in China. Except for one defendant who settled, all of the defendants defaulted long ago. *See id.* at 126. In 2011, the district court agreed to award Gucci a $12 million default judgment, but deferred entering judgment so that Gucci could continue to litigate several issues against non-party BOC, a bank headquartered in China. *See* Decl. of Laura R. Hall dated December 1, 2015 ("Hall"), Ex. A (Jan. 5, 2011 Tr.) 6:16-21, 59:15-60:5, 63:20-64:3; *id.* Ex. B (Proposed Default Judgment) ¶ 6.

As is relevant to this appeal, Gucci served document subpoenas (the "Subpoenas") on non-party BOC seeking information about accounts that defendants hold at the Bank in China. *See* Hall Ex. C (July 16, 2010 Subpoena

("2010 Subpoena")); *id.* Ex. D (Feb. 23, 2011 Subpoena ("2011 Subpoena," and together with the 2010 Subpoena, the "Subpoenas")).

In August 2011, the district court ordered BOC to comply with the 2010 Subpoena, and, in November 2012, it held BOC in contempt of the August 2011 order and imposed monetary sanctions of $10,000 per day. This Court stayed the contempt order and sanctions to allow BOC to appeal. *See Gucci*, 768 F.3d at 128 & n.7. Holding that the district court lacks general jurisdiction over BOC, this Court reversed the district court's compulsion and contempt orders. *See id.* at 126, 141-44. The contempt order also was reversed because the district court imposed an impermissible punitive sanction and because BOC did not violate a clear order. *See id.* at 142-44. On remand, this Court directed the district court to consider whether it has specific jurisdiction to order BOC "to comply with particular discovery demands," and "whether proper application of the principles of comity demonstrates that it may exercise such jurisdiction." *Id.* at 141-42, 145. It also mandated that the district court "may not impose sanctions . . . without finding a new violation of a court order." *Id.* at 142 & n.24.

---

[1] Plaintiffs are Gucci America, Inc., Balenciaga America, Inc., Balenciaga S.A., Bottega Veneta International S.A.R.L., Bottega Veneta, Inc., Luxury Goods International (L.G.I.) S.A. and Yves Saint Laurent America, Inc.

2

On December 1, 2014, Gucci again moved to compel, contending that the district court had specific jurisdiction to compel BOC to comply with the Subpoenas because, in 2009 and 2010, certain of the defendants made a handful of transfers from accounts they held at Chase Bank in the United States to accounts at BOC in China.

The documents on which Gucci sought to base specific jurisdiction are far from self-explanatory. Hall Ex. E (ECF Nos. 138-2 - 138-12). So that the district court would understand them, BOC submitted expert evidence from an experienced bank examiner and regulator, John M. Wagner, III, who explained the documents and the transfers reflected in them. Hall Ex. F (ECF No. 144 (Wagner Decl.)). Gucci took no issue with Mr. Wagner's opinion, and it submitted no contrary evidence.

As Mr. Wagner explained, those documents showed that Chase Bank had executed eleven funds transfers from defendants' accounts at Chase Bank in the United States to defendants' accounts at BOC in Beijing. *Id.* ¶¶ 21-29. The documents did not specify how Chase Bank executed four of the transfers, *id*. ¶ 24, but it executed seven of them by crediting a correspondent account that BOC's Head Office maintains at Chase Bank, with instructions that BOC should, in turn, credit defendants' accounts at BOC in Beijing. *Id*. ¶ 28. BOC took no action in the United States. It simply made book entries, in China, crediting its customers'

3

accounts in China. *Id*. ¶¶ 13, 21-29. A compliance officer at BOC's New York branch confirmed that BOC's U.S. branches had no involvement in the transfers. Hall Ex. G (ECF No. 145 (Deng Decl.)). That declaration, too, is uncontroverted.

Gucci failed to establish specific jurisdiction to compel BOC to comply with the Subpoenas. *First*, there is no basis for specific jurisdiction, either under New York's long-arm statute or under the federal Due Process Clause, because BOC's passive receipt of wire transfers initiated by others does not constitute purposeful in-forum conduct. Hall Ex. H (ECF No. 141 (BOC's Opp'n)) at 8-10, 13-15. *Second*, those transfers do not give rise to specific jurisdiction to compel compliance with the Subpoenas because the Subpoenas do not arise from or relate to those transfers. Rather, they seek information about defendants' accounts at BOC in China. *See id.* at 10-13. *Third*, it would be unreasonable to exercise jurisdiction to compel BOC to comply with the Subpoenas in the transnational context of this case. *See id.* at 15-22. *Finally*, even if the district court had jurisdiction to compel BOC to comply with the Subpoenas, it could not do so consistent with principles of international comity. *See id.* at 22-25.

In orders dated September 29, 2015 and October 16, 2015 (together, the "Compulsion Order"), the district court rejected BOC's objections and ordered the Bank to comply with the Subpoenas by October 23, 2015. Hall Ex. I (ECF No. 158 (Sept. 29, 2015 Op. & Order)) ("Sept. Op."); *id.* Ex. J (ECF No. 161 (Oct. 16,

2015 Order)). On October 23, 2015, BOC notified Gucci that, as it maintains that the district court erred in finding specific jurisdiction and cannot comply with the Compulsion Order without violating Chinese law,[2] if Gucci pressed the matter, BOC would seek relief from this Court, which would require BOC not to comply with the Compulsion Order so that it could appeal from an order of contempt, and thereby appeal the Compulsion Order. Hall Ex. K (ECF No. 165-1).[3]

Three weeks later, Gucci moved to hold BOC in contempt. The district court ordered BOC to respond within one week, and denied BOC's request for additional time to respond, instead moving the hearing up by a day. Hall Ex. L (ECF No. 162 (Order to Show Cause)); *id.* Exs. M & N (ECF Nos. 166-67).

At the hearing on November 24, 2015, the district court rejected BOC's arguments that it should not be held in contempt or that sanctions should not be imposed, in the following terms: "I am going to order you to compel and then you are going to just basically thumb your nose at me or use some other finger to figuratively tell me what you think of the ruling and of the court system and of

---

[2] The Chinese courts have already held the Bank liable to its customers (defendants in this case), due to the impossible situation created by the district court's extraterritorial orders. Hall Ex. H (BOC Opp'n) at 3; *id.* Ex. O (ECF No. 142 (Zhang Decl.)) at ¶¶ 30-31.

[3] *See Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 17 (2d Cir. 1992) ("A non-party witness ordinarily may not appeal directly from an order compelling discovery but

U.S. law and then we are all just going to go on our way?"  Hall Ex. Q (Nov. 24, 2015 Tr.) 18:21-25.  Instead, it vowed to impose on BOC "pain that makes that gripping little hand let go of the damn thing that they've been ordered to give up . . . ."  *Id.* 31:25-32:2.

On November 30, 2015, the district court held BOC in contempt, imposed sanctions and awarded attorneys' fees.  Hall Ex. R (Contempt Order).  Despite ruling in 2012 that $10,000 per day would be an appropriate coercive sanction in light of BOC's resources, the district court imposed a daily coercive sanction of $50,000 because "BOC has continued to flout the Court's orders since 2011," *id.* at 7, ignoring that all of the district court's earlier orders against BOC were reversed.

The district court refused to stay the Contempt Order pending appeal.  *Id.* at 10-12.  This Court's prior reversal of the district court's earlier contempt order occurred approximately 22 months after that contempt order was entered.  Assuming an appeal of similar length, absent a stay, the daily fines imposed on BOC while it pursues this appeal could reach $33 million or more.

BOC respectfully requests that this Court stay the Contempt Order and the sanctions imposed thereby pending appeal.  For the reasons outlined herein,

---

must instead defy the order and be found in contempt in order to obtain review of the court's initial order.") (citation omitted).

the Contempt Order and the Compulsion Order are highly likely to be reversed, and BOC should not have to endure coercive and exorbitant sanctions while it vindicates its due process rights on appeal. The public interest will be served, and Gucci will suffer no prejudice as a result of the requested stay.

## STANDARD OF LAW

In considering a request for a stay pending appeal, this Court weighs "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *SEC v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (citations omitted). The factors are flexibly applied, such that "more of one excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334-36 (2d Cir. 2006) (quotations and citations omitted).

## ARGUMENT

## I. THE COMPULSION AND CONTEMPT ORDERS ARE HIGHLY LIKELY TO BE REVERSED

### A. The District Court Erroneously Asserted Specific Jurisdiction Over Non-Party BOC Based On The In-Forum Conduct Of Others

The district court held that BOC is subject to specific jurisdiction pursuant to this Court's decision in *Licci v. Lebanese Canadian Bank, SAL*, 732

7

F.3d 161 (2d Cir. 2013) ("*Licci II*"), based on BOC's receipt of a handful of funds transfers that were executed by defendants and Chase Bank.  According to the district court, BOC's conduct was "strikingly similar" to, or "even more substantial, deliberate and recurring than that of the foreign bank in the *Licci* cases."  Hall Ex. I (Sept. Op.) at 4-5.

The district court reached that conclusion, and thereby had "no trouble" concluding that BOC had purposefully availed itself of the privilege of conducting business in New York, *id*. at 5, 8-9, by misunderstanding *Licci* and by both misunderstanding and ignoring the evidence before it.

As outlined above, BOC presented expert evidence to explain the documents on which Gucci based its jurisdictional argument, so that the district court could discharge its responsibility "to 'closely examine the defendant's contacts for their quality.'" *Licci II*, 732 F.3d at 168 (quoting *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012) ("*Licci I*")).  Mr. Wagner showed that BOC engaged in no conduct in the United States and directed no conduct at the United States.  Rather, it was merely the passive recipient of transfers that defendants initiated and that Chase Bank executed by depositing funds into a correspondent account that BOC's Head Office holds at Chase Bank. The district court ignored Mr. Wagner's opinion, failing even to acknowledge it,

and instead ruled based on its own erroneous interpretations of the evidence.[4]  As a result, the district court's decision represents a thoroughly ill-informed misapplication of *Licci*.

In *Licci I*, the New York Court of Appeals held that a foreign bank's use of a U.S. correspondent account can constitute a transaction of business under New York's long-arm statute, but only if it is "purposeful."  *Licci II*, 732 F.3d at 168 (citing *Licci I*, 20 N.Y.3d at 338-39).  The *Licci I* court "focused on" the bank's repeated, active use of its U.S. correspondent account to execute dozens of wire transfers in support of "terrorist goals" that it shared with its client, and concluded that this conduct satisfied the purposefulness requirement.  *Licci II*, 732

---

[4] In addition to misunderstanding the nature of the transfers, the district court mischaracterized the defendants as "U.S. clients" of BOC, when they actually are "U.S. clients" of Chase Bank, not of BOC.  Hall Ex. G (Deng ¶¶ 4-5).  The district court also referenced the fact that BOC advertises wire transfer services on its website (which the district court criticized as "boast[ing]"), and suggested that this "marketing apparently captivated Defendants."  Hall Ex. I (Sept. Op.) at 5.  The district court had no basis to conclude that defendants were aware of, let alone "captivated" by, BOC's advertising, and the notion makes no sense, given that defendants used Chase Bank, not BOC, to make the transfers.  The district court's suggestion that "BOC encouraged its clients to rely on its relationships with Chase so that they could effectuate frequent wire transfers from the United States to China," *id.*, is equally unsupported, and the district court did not attempt to explain what rational business would "encourage[]" potential customers to use the services of a competitor.

F.3d at 168 (citing *Licci I*, 20 N.Y.3d at 340).[5]  This Court, in turn, ruled that the same active, purposeful and deliberate conduct satisfied the purposeful availment requirement of the federal Due Process Clause.  *Licci II*, 732 F.3d at 169-71.

The New York Court of Appeals made very clear, however, that, in contrast to the *Licci* bank's active *use* of a correspondent account to *make* illegal transfers to terrorists, a bank does not purposefully avail itself of the privilege of conducting business in New York when it is "passively and unilaterally" made the recipient of a transfer, because when someone else deposits funds into the bank's correspondent account, the bank's "use" of the account is "adventitious," *i.e.*, it is "not even [the bank's] doing."  *Licci I*, 20 N.Y.3d at 335-38 (quotations and citations omitted).   In exactly the same way, the federal Due Process Clause does not permit a person to be subjected to specific jurisdiction based on the conduct of someone else.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).[6]

---

[5] *See also Licci I*, 20 N.Y.3d at 333 (noting that plaintiffs alleged that the bank engaged in the "active execution through New York of dozens of wire transfers totaling millions of dollars over a multi-year period") (citing *Licci v. Lebanese Canadian Bank, SAL*, 704 F. Supp. 2d 403, 407-08 (S.D.N.Y. 2010)).

[6] *See also Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, No. 14 Civ. 5216(DLC), 2015 WL 4164763, at *4 (S.D.N.Y. July 10, 2015) (holding that a foreign bank's receipt of a transfer into a correspondent account in New York did not give rise to specific jurisdiction because "this use of the correspondent account was initiated by a party other than [the bank]"); *George v. Shadow Ridge Props.*, No. 4:14-CV-1167(CEJ), 2015 WL 300389, at *3 (E.D. Mo. Jan. 22, 2015) (no specific jurisdiction over defendant based on receipt of a wire transfer that was "used to

Thus, if the district court had applied the holdings in the *Licci* cases to the uncontroverted evidence before it, it could only have concluded that BOC was not subject to specific jurisdiction. The Compulsion Order and the Contempt Order are, therefore, highly likely to be reversed.

**B.     The District Court Erroneously Asserted Specific Jurisdiction Based On Non-Party BOC's New York Contacts That Have Nothing To Do With The Subpoenas Or With This Lawsuit**

The district court further erred by asserting specific jurisdiction based on BOC's New York contacts that have nothing to do with the Subpoenas or with this lawsuit, specifically: that BOC has two New York branches, solicits business and customers in New York, owns real property in New York, and has filed lawsuits in New York. Hall Ex. I (Sept. Op.) at 8. Based on these general, non-suit-related contacts, the district court reaffirmed its August 2011 conclusion (reached years before the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)) that BOC "'has purposely chosen to do business in New York and has availed itself of the myriad benefits that come with establishing a presence in the United States' premier financial center.'" Hall Ex. I (Sept. Op.) at

---

send money out of not into Missouri"); *Gargano v. Cayman Nat'l Corp.*, No. 09-11938-JLT, 2010 WL 2245034, at *6 (D. Mass. June 2, 2010) (noting that "[t]he receipt of a wire transfer is an inherently passive action[,]" and holding that the "fact that Defendants *received* money from Plaintiff's United States bank account is not purposeful availment of an opportunity to act in the United States") (emphasis in original).

8 (quoting *Gucci Am, Inc. v. Weixing Li*, No. 10 Civ. 4974(RJS), 2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011), *rev'd*, 768 F.3d 122 (2d Cir. 2014)).

Based on these non-suit-related contacts, the district court brushed aside all of the case law that establishes that receiving a wire transfer from New York does not subject the recipient to specific jurisdiction, on the basis that none of those cases "involved a foreign bank deliberately thrusting itself into the New York financial market by establishing a New York office and a correspondent account with a New York bank . . . ." Hall Ex. I (Sept. Op. at 6).

The district court's assertion of jurisdiction based on a hodgepodge of contacts that establish neither general jurisdiction nor specific jurisdiction cannot be reconciled with the Supreme Court's personal jurisdiction jurisprudence. *First*, under *Daimler*, the fact that a foreign corporation does business in the forum does not authorize general jurisdiction. *See* 134 S. Ct. at 735 & n.18. *Second*, specific jurisdiction is available only when the "suit-related conduct" of the person over whom jurisdiction is to be exercised creates "a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121.[7] *Third*, general and specific jurisdiction

---

[7] *See also 7 West 57th Street Realty Co. v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2015 WL 1514539, at *10 (S.D.N.Y. Mar. 31, 2015) ("Plaintiffs must demonstrate that the Foreign Banks' *suit-related* conduct creates minimum contacts with New York . . . . General contacts with New York are not sufficient to establish specific jurisdiction.") (citing *Walden*, 134 S. Ct. at 1121) (emphasis in original).

12

have separate "respective provinces," *Daimler*, 134 S. Ct. at 754 n.5, and it is error to "confus[e] or blend[] general and specific jurisdictional inquiries," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).[8]

Faced with the prospect of lacking jurisdiction over a "foreign bank" that it viewed as having "deliberately thrust[] itself into the New York financial market," Hall Ex. I (Sept. Op.) at 6, the district court took BOC's general, non-suit-related contacts with New York, which are irrelevant to a general jurisdiction analysis under *Daimler*, and redeployed them in support of a boundless concept of specific jurisdiction that arises from contacts that have nothing to do with the lawsuit (or, in this case, the Subpoenas). As a result of that fundamental error, the Compulsion Order and the Contempt Order are highly likely to be reversed.[9]

---

[8] *Accord Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) ("In *Daimler*, the Court confirmed its adherence to the distinction between 'general jurisdiction' and 'specific jurisdiction.'").

[9] This error also infected the district court's consideration of the requirement that the Subpoenas "arise out of or relate to" BOC's in-forum contacts. *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 674 (2d Cir. 2013). In no way do the Subpoenas arise from or relate to any in-forum conduct by BOC, but, having concluded that BOC has significant (although non-suit-related) contacts with New York, the district court applied a minimal relatedness standard. Hall Ex. I (Sept. Op.) at 9. If the district court had correctly applied the relatedness requirement, it would have concluded that the Subpoenas do not "arise out of or relate to" BOC's alleged in-forum conduct. As the district court correctly noted in 2011, when its jurisdiction did not depend upon in-forum contacts, the 2010 Subpoena "seeks documents related to Defendants' bank accounts *in China*." *Gucci*, 2011 WL

13

**C.** **The District Court Failed To Consider Properly The Reasonableness Of Exercising Jurisdiction Over Non-Party BOC In The Transnational Context Of This Case**

BOC demonstrated to the district court that it would be wholly unreasonable to exercise jurisdiction over BOC, a non-party Chinese bank, simply because a French luxury goods conglomerate insists on suing in New York despite the fact that the defendants, their assets, and the evidence it claims to need are all apparently located in China. Hall Ex. H (BOC Opp'n) at 15-22.[10]

The district court's reliance on a host of non-suit-related contacts that should not have played any role in a specific jurisdiction analysis led inexorably to an erroneous reasonableness inquiry. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (holding that the reasonableness inquiry "evokes a sliding scale: the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction") (alteration in original; quotation marks and citation omitted).

6156936, at *5-6 (emphasis added). The same is plainly true of the 2011 Subpoena. Hall Ex. D (2011 Subpoena).

[10] BOC demonstrated that Gucci has, in the recent past, successfully prosecuted counterfeiting cases in China. Hall Ex. H (BOC Opp'n) at 20; Ex. O (Zhang Decl.) at ¶¶ 57-59. The district court did not acknowledge this evidence, and instead referred back to its August 2011 conclusion that "[f]orcing Gucci to initiate this process in China would be significantly less efficient, extremely time-consuming, and potentially fruitless." Hall Ex. I (Sept. Op.) at 11.

Among other errors, even though the district court was being asked to compel BOC to violate China's banking laws, the district court declined to consider China's interest.  Hall Ex. I (Sept. Op.) at 10.  It thereby squarely violated the Supreme Court's admonition that courts must consider in their reasonableness analyses "the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction . . . ."  *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987) (emphasis in original).

The district court also declined to consider the reasonableness of asserting jurisdiction over BOC for the purpose of ordering it to violate the law of China, on the basis of prior cases that addressed such things as the costs of shipping documents from Pennsylvania to Vermont.  Hall Ex. I (Sept. Op.) at 10 (citing *Metro. Life*, 84 F.3d at 573-74).  But if such relatively trivial concerns are relevant, it is difficult indeed to see why the burden of being ordered to violate the laws of one's home jurisdiction should be disregarded.

Further, the district court failed to grapple at all with the implications of asserting jurisdiction based on receipt of a funds transfer from New York.  To place in context the handful of transfers to BOC, Mr. Wagner explained that, in 2014, the CHIPS payment system alone processed over 109 million transfers with a value of $390 trillion.  Hall Ex. F (Wagner Decl.) ¶ 17.  In November 2014, the Fedwire system processed each day over 560,000 transfers with a value exceeding

15

$3.5 trillion.  *Id*. ¶ 18.  In 2014, SWIFT, the messaging system used for four of the

transfers to BOC, Hall Ex. E (Weigel Exs. 9-12), processed 24.6 million messages

each day, for a total of 5.6 trillion messages that year.  Hall Ex. F (Wagner Decl.)

¶ 16.  If every funds transfer from New York subjected the recipient bank to

specific jurisdiction, the practical result would be "*de facto* universal

jurisdiction[,]" contrary to decades of Supreme Court jurisprudence.  *Advanced

Tactical*, 751 F.3d at 801-02.

> **D.    The District Court Did Not Comply With This Court's Mandate
> To Reconsider The Comity Implications Of Exercising
> Jurisdiction Over Non-Party BOC**

This Court directed that, if the district court determined on remand

that it had specific jurisdiction over BOC, then it must also reconsider "whether

proper application of the principles of comity demonstrates that it may exercise

such jurisdiction."  *Gucci*, 768 F.3d at 141-42, 145.  This Court specifically

directed that the renewed comity analysis must include consideration of the

judgments rendered against BOC in the lawsuits that several of the defendants in

this case brought against the Bank in Beijing as a result of the district court's

orders.  *See id.* at 140 & n.19.

As the Chinese courts concluded, in essence, that BOC cannot violate

Chinese law in order to comply with a U.S. court order, Hall Ex. H (BOC Opp'n)

at 3-4; Hall Ex. O (Zhang Decl.) at ¶¶ 30-31, the district court's conclusion that

those judgments "shift the balance of national interests more firmly toward the United States," Hall Ex. I (Sept. Op.) at 13, cannot withstand scrutiny.  Just as erroneous is the district court's determination that this Court had "explicitly cabined the Court's reconsideration of its comity analysis" to the impact of the Beijing judgments.   Hall Ex. I (Sept. Op.) at 13 & n.2.

This Court clearly did not direct the district court to turn a blind eye to all of the other developments that have taken place since it last considered the comity issue in August 2011.  Among other things, the district court's frozen-in-time comity analysis ignores that, contrary to the district court's August 2011 prediction, the Hague Evidence Convention has proven to be effective at obtaining banking records from China in two similar cases.  Hall Ex. I (BOC Opp'n) at 2.[11]

Moreover, as the United States noted in its amicus curiae brief to this Court, the district court erred in its August 2011 comity analysis by mischaracterizing China banking laws as conferring merely "an individual privilege on customers rather than reflect[ing] a national policy entitled to

---

[11] *See Tiffany (NJ) LLC v. Qi Andrew*, No. 10 Civ. 9471(RA)(HBP), 2012 WL 5451259 (S.D.N.Y. Nov. 7, 2012) (Pitman, M.J.) (holding that the Hague Evidence Convention yielded sufficient evidence from Chinese banks, including BOC, to permit plaintiffs (represented by Gucci's counsel) to prosecute their Lanham Act claims, and that to conclude that "Federal Rules discovery is the only fair manner in which to conduct discovery would be the essence of sanctimonious chauvinism") (citation and internal quotation omitted), *aff'd*, Order, No. 10 Civ. 9471(RA)(HBP) (S.D.N.Y. May 21, 2013),  ECF No 70.

17

substantial deference" and by failing to defer to China's assertion of a broader national interest in those laws. Hall Ex. P (Amicus Br. of the United States) at 24-25. As a result of the district court's reliance on its original 2011 comity conclusion, the Compulsion Order contains the exact same error. Hall Ex. I (Sept. Op.) at 13.

## II.     THE HARM CAUSED BY "COERCIVE" SANCTIONS IS INHERENTLY IRREMEDIABLE

If the Contempt Order were not stayed, BOC would be irremediably harmed because—by definition and by design—coercive sanctions require non-party appellant BOC to choose between enduring coercion (in this case, $50,000 per day, or $18.25 million per year) in order to appeal, or surrendering to the coercion, violating Chinese law, and risking mooting the appeal. A stay is required to avoid inherently irremediable harm that would be caused if BOC were coerced into giving up its right to appeal the district court's erroneous post-remand decisions. *See Mikutaitis v. United States*, 478 U.S. 1306, 1309-10 (Stevens, Circuit Justice 1986) (staying contempt sanctions because "continued enforcement of the contempt order may have the practical consequence of rendering the proceeding moot if Mikutaitis is pressured into testifying").[12]

---

[12] *Accord Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir. 1979) ("If a stay is denied, Braddick will be irreparably harmed because he will be forced to choose between complying with the discovery order . . . and continuing his refusal to

As a contempt citation represents a non-party's sole route to appeal an erroneous discovery order, *see, e.g.*, *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 17 (2d Cir. 1992), courts frequently stay contempt orders and sanctions pending appeal, as this Court previously did in this case.  *See Gucci*, 768 F.2d at 128 n.7.[13]

## III.  A STAY WILL SERVE THE PUBLIC INTEREST AND WILL CAUSE GUCCI NO HARM

The public interest will be served by a stay because BOC's appeal raises significant issues concerning the interaction between general and specific jurisdiction, and questions that are likely to recur concerning the exercise of specific jurisdiction over foreign banks post-*Daimler*.  *See Rafidain Bank*, 131 F. Supp. 2d at 543 (granting a stay because the appeal implicated "important issues

---

comply with exposure to possible sanctions for contempt."); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F. Supp. 2d 540, 543 (S.D.N.Y. 2001) ("The Court further concludes that Rafidain will suffer irreparable harm unless a stay of the discovery sought by the 1998 Subpoenas is granted, since it will then be obligated, in order to purge its contempt, to provide the very discovery it argues it has no obligation to produce.").

[13] *See also OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 92 (2d Cir. 2006) (granting stay of contempt order against non-party witness pending appeal); *In re Application to Quash Subpoena to Nat'l Broad. Co.*, 79 F.3d 346, 350 (2d Cir. 1996) (same); *Mount Sinai School of Medicine v. Am. Tobacco Co.* (*Application of Am. Tobacco Co.*), 880 F.2d 1520, 1526 (2d Cir. 1989) (noting that the district court stayed contempt sanctions for failure to comply with a non-party subpoena pending appeal); *In re Grand Jury Subpoena Duces Tecum Dated Apr. 23, 1981 Witness v. United States*, 657 F.2d 5, 7 (2d Cir. 1981) (same).

concerning the duty of non-party foreign instrumentalities to supply discovery in federal litigation").

Meanwhile, Gucci would suffer no harm from a stay. It is well-established that mere delay in resolving a discovery dispute does not outweigh the substantial harm that BOC would suffer if coerced into mooting its appeal. *See Mikutaitis*, 478 U.S. at 1309. Nor can there be any sincere claim of urgency, given that this case has been pending since 2010, and the district court took more than seven months to rule on the motion to compel. BOC's successful efforts to secure the reversal of the district court's prior erroneous orders, and its wish to protect itself from the unwarranted exercise of jurisdiction arising from the district court's erroneous post-remand orders should not be castigated as an "exercise in delay" and used to justify increasingly punitive sanctions. *See* Hall Ex. Q (Nov. 24, 2015 Tr.), at 35-36; Hall Ex. R (Contempt Order) at 7-8.

## **CONCLUSION**

For the foregoing reasons, BOC respectfully requests that this Court stay the district court's Contempt Order entered on November 30, 2015 in its entirety pending final resolution of BOC's appeal.

20

December 1, 2015                    Respectfully submitted,

                                   /s/ Laura R. Hall
                                   _____
                                   ALLEN & OVERY LLP
                                   Laura R. Hall
                                   laura.hall@allenovery.com
                                   Justin L. Ormand
                                   justin.ormand@allenovery.com
                                   1221 Avenue of the Americas
                                   New York, New York 10020
                                   Tel: 212-610-6300
                                   Fax: 212-610-6399

                                   *Attorneys for Non-Party Appellant Bank of China*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately-spaced typeface using Microsoft Word, 14 point font size.

Dated:      December 1, 2015
            New York, New York

                        /s/ Laura R. Hall
                        Laura R. Hall